IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **EQT CORPORATION,** | ) ) ) ) |
| *Plaintiff,* | ) ) ) |
| v. | ) ) ) No. **25-991 C** |
| **THE UNITED STATES OF AMERICA;** **FEDERAL COMMUNICATIONS COMMISSION;** **UNIVERSAL SERVICE ADMINISTRATIVE COMPANY,** | ) ) ) ) ) ) ) |
| *Defendants.* | ) ) ) ) |

# COMPLAINT

Plaintiff, EQT CORPORATION ("EQT"), brings this Complaint against Defendants, THE UNITED STATES OF AMERICA, the FEDERAL COMMUNICATIONS COMMISSION ("FCC"), and the UNIVERSAL SERVICE ADMINISTRATIVE COMPANY ("USAC") and alleges as follows:

## NATURE OF THE ACTION

1. This is a civil action brought under 28 U.S.C. § 1491 concerning Defendants' imposition of the Universal Service Fund ("USF") tax upon EQT as a consumer of telecommunications services. The USF consists of money collected by a private subsidiary of FCC, with the collection rate set quarterly with no Congressional oversight.

2. Under the Telecommunications Act of 1996, Congress delegated to the FCC the authority to exact "contributions" (the Act's term for a tax) to be paid into the USF in order to

support a vaguely defined concept of "universal service." *See* 47 U.S.C. § 254. The defendant FCC in turn delegated this taxing authority to a Delaware corporation—a private corporation with a board of directors, largely or exclusively composed of private persons who represented organizations that would be beneficiaries of the USF. Every quarter, this Delaware corporation, the defendant USAC, set the tax rate (in the Act's terms, the "contribution rate"); the USAC collected and disbursed the funds collected to various programs. *See* 47 C.F.R. § 54.701(a). Through this process, Congress delegated its legislative taxing-and-spending authority to the FCC, which in turn delegated that authority to a private corporation.

3. After the quarterly tax rate was set by USAC, telecommunication providers were required to pay contributions based on percentages of their revenue derived from certain telecommunications services. In turn, as allowed by defendant FCC's regulation, telecommunication providers collected this tax from their customers. 47 C.F.R. § 54.712. Due to the lack of political accountability, the USF tax rate has quadrupled since this process was first established and now sits at a staggering 36.6%. *Proposed Second Quarter 2025 Universal Service Contribution Factor*, Public Notice, DA Docket No. 25-223, FCC 96-45 (rel. Mar. 13, 2025), *available at* https://docs.fcc.gov/public/attachments/DA-25-223A1.pdf.

4. The Constitution vests in Congress the exclusive authority "to lay and collect taxes." U.S. CONST. art. I, § 8, cl. 1. The Constitution also vests in Congress "All legislative powers…." Id. at § 1. Accordingly, these powers may not be delegated to any executive agency or private person. *See Consumers' Rsch. Cause Based Commerce, Inc. v. FCC*, 109 F.4th 743, 786 (5th Cir. 2024) (en banc), *cert. granted*, 220 L.Ed. 2d 227 (2024). The "double-layered delegation of taxing authority," described in ¶ 2 "is incompatible with our constitutional structure."

*Id.* at 784 (internal citation omitted). In effect, the USF subjects telecommunications consumers like EQT to "a multi-billion-dollar tax nobody voted for." *Id.* at 786.

5. EQT has purchased telecommunications services since the USF was first established and has therefore been paying the corresponding tax. EQT purchased telecommunications services from multiple providers, who, in turn, collected the USF tax from EQT on behalf of Defendants and remitted the collected USF funds to Defendants.

6. Consistent with the Fifth Circuit's decision in *Consumers' Research*, this USF regime constitutes an illegal delegation of taxing power, and thus violates the Constitution. Accordingly, since it is not authorized by a valid law, the exaction of money from EQT under the USF violates the Fifth Amendment as a taking of EQT's property for which no just compensation was provided. U.S. CONST. amend. V. As such, EQT brings this suit against Defendants to recover the property taken.

7. Further, money collected by Defendants under the USF constitutes an illegal exaction in violation of the Fifth Amendment as money improperly obtained by the government in contravention of the Constitution. EQT brings this suit against Defendants to recover the money improperly held.

8. Alternatively, to the extent the USF collected by the FCC, and by extension the USAC, exceeds the FCC's statutory mandate under 47 U.S.C. § 254, any money collected by those Defendants in excess of that statutory mandate constitutes an illegal exaction in violation of the Fifth Amendment as money improperly obtained by the government in contravention of the Constitution.

**PARTIES**

9. Plaintiff EQT Corporation is a vertically integrated natural gas company with production, gathering and transmission operations focused in the Appalachian Basin. In the course of conducting its business, EQT Corporation purchases significant interstate telecommunications services subject to the USF tax and thus has paid significant USF tax to Defendants. EQT Corporation is a Pennsylvania corporation whose principal place of business is 625 Liberty Avenue, Suite 1700, Pittsburgh, Pennsylvania 15222.

10. Defendant United States is a republic formed pursuant to the Constitution of the United States and is responsible for exercising the powers described therein subject to certain limitations, including but not limited to the Fifth Amendment to the United States Constitution.

11. Defendant FCC is a regulatory agency created by Congress. 47 U.S.C. §§ 151, 154. The FCC is responsible for implementing and enforcing America's communications laws and regulations, including the USF.

12. Defendant USAC is a corporation to which the FCC has delegated responsibility to administer the USF. 47 C.F.R. § 54.701. USAC is a Delaware corporation managed by a board of directors composed of private persons with a special interest in the USF who are appointed by the chairman of the FCC. 47 C.F.R. § 54.703.

**JURISDICTION AND VENUE**

13. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1491, which provides "[t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded upon either the Constitution, or any act of Congress or any regulation of an executive department."

14. Venue is appropriate in this court because the claim is for more than $10,000. 28 U.S.C. 1491(a)(1); *see also U.S. Marine, Inc. v. United States*, 722 F.3d 1360, 1366 (Fed. Cir. 2013).

15. EQT is seeking relief in this Court in the first instance because there is no provision in the Telecommunications Act of 1996 or other provisions of federal law that would allow it to seek an administrative refund of the USF it was required to pay in violation of the U.S. Constitution.

## FACTUAL BACKGROUND

**A. Through the Telecommunications Act of 1996 Congress delegated taxing authority to the FCC; the FCC in turn delegated taxing authority to USAC.**

16. Nearly 30 years ago Congress enacted the Telecommunications Act of 1996 authorizing FCC to establish "specific, predictable, and sufficient … mechanisms to preserve and advance universal service." 47 U.S.C. § 254(b)(5). Additionally, the Telecommunications Act of 1996 delegated to the FCC the authority to require mandatory "contributions" to fund this "universal service."

17. Rather than collect the tax and administer the USF itself, FCC created the Universal Service Administrative Company to manage all aspects of the USF. USAC is a private subsidiary managed by representatives from various interest groups affected by, and interested in, universal service programs. *See* 47 C.F.R. § 54.703. USAC's Board of Directors are neither elected by the public nor appointed by the president, a court of law, or a head of a department. *See* U.S. Const. Art. II, Sec. 2, Cl. 2.

18. FCC vests USAC with a number of tasks, to include "billing … , collecting … , and disbursing universal service support funds." 47 C.F.R. 54.702(b). Most significantly, USAC decides the quarterly USF "contribution" rate (i.e, tax rate) based upon the projected costs for

administering its universal support programs. *Id.* The tax rate dictates the amount of USF contributions that will be collected from telecommunications consumers and paid to Defendants. This process—from start to finish—requires *no Congressional oversight or input*.

**B.    The USF effectively burdens consumers of telecommunications services, not the providers.**

19.    Section 254(d) of the Telecommunications Act of 1996 requires every telecommunications carrier providing interstate telecommunications services to contribute to the USF. *See* 47 U.S.C. § 254(d). The telecommunications companies, however, are not required to actually bear this cost. Instead, FCC's regulations permit carriers to pass the mandatory contribution through to their customers. 47 C.F.R. § 54.712(a). That is in fact how nearly every telecommunications provider funds its contribution amount. The overwhelming majority of telecommunications providers pass the cost of contribution on to consumers in the form of a line item on their monthly bill. According to FCC, over 80% of telecommunications service providers pass the costs through to the consumer. *See* FCC, FCC 22-67, *Report on the Future of the Universal Service Fund*, 45–46 (Aug. 12, 2022).

20.    FCC acknowledges that telecommunications consumers, and not the providers, are the ones burdened of the USF. In reporting on "The Future of the Universal Service Fund," FCC discussed the USF contribution amount in terms of "[t]he contribution burden on households[,]" even including a table to compare the "Total (residential plus business) Contributions" to "Residential Contributions". FCC, *Report to Congress*, at 46. FCC's report did not focus on increased contribution amounts from telecommunications providers; instead, FCC analyzed the USF funding as "contribution amounts collected from end-users to fund the USF programs[.]" *Id.* at 47.

6

21. Even Congressional experts acknowledge that the USF's burden is on telecommunications *consumers*, not providers. Last year the Congressional Research Service's "specialist in internet and telecommunications policy" prepared a report analyzing various aspects of the USF including how to "reduce the contribution rate, while still maintaining the necessary level of funding[.]" Patricia Moloney Figliola, Cong. Rsch. Serv., R47621, *The Future of the Universal Service Fund and Related Broadband Programs*, 16 (March 1, 2024). In examining alternative options for USF funding sources, the CRS expert noted that one option "would provide the broadest possible base for funding USF programs, while reducing burdens on *consumers*." *Id.* at 17 (emphasis added). By focusing on the potential burden on consumers, the report further highlighted the reality that the USF burdens consumers of telecommunications, such as EQT, not telecommunication providers.

C.  **The USF is not a "contribution" or a "fee" but a tax.**

22. In defending the USF before the Eleventh, Sixth, and (most recently) the Fifth Circuits "FCC's principal defense of the USF scheme [was] that the USF … is not really a tax at all. Rather, FCC contend[ed], it is a fee." *Consumers' Rsch.*, 109 F.4th at 756; *see also Consumers' Rsch. v. FCC*, 67 F.4th 773 (6th Cir. 2023); *Consumers' Rsch. v. FCC*, 88 F.4th 917 (11th Cir. 2023). Under Supreme Court precedent, a fee is a charge that creates a benefit for the payor "not shared by other members of society." *Nat'l Cable Television Ass'n v. United States*, 415 U.S. 336, 341 (1974). Traditionally, a fee has three characteristics. First, fees are incurred "incident to a voluntary act." *Nat'l Cable*, 415 U.S. at 341. Second, fees are typically imposed "only on those persons, or entities, subject to its regulation for regulatory purposes." *Valero Terrestrial Corp. v. Caffrey*, 205 F.3d 130, 134 (4th Cir. 200). Finally, the money raised through

7

its collection is used to supply benefits to the persons or entities paying them rather than to the public generally. *See Nat'l Cable*, 415 U.S. at 343.

23. The money paid into the USF does not have any the three characteristics. First, the money is not given as a "voluntary act." *Nat'l Cable*, 415 U.S. at 341. Telecommunication service providers are not given a choice on whether to contribute to the USF or not, and consumers are likewise not able to decline paying the USF line item on their monthly bill. Instead, paying into the USF is a necessary cost associated with purchasing telecommunications services. Second, the USF is imposed on a greater number of persons or entities than are "subject to its regulations for regulatory purposes." *Valero Terrestrial*, 205 F.3d at 134. As explained above, both the FCC and Congressional experts acknowledge that the real burden of USF falls on consumers rather than the telecommunications providers subject to FCC regulation. In this way, the cost of the USF is not borne by regulated parties. Rather, it is borne by millions of consumers, such as EQT. Finally, the USF fails to benefit those contributing to it. The entire purpose of the USF is to create nationwide access to telecommunications services with a focus on rural, high-cost areas, and low-income individuals. *See* 47 U.S.C. § 254. Essentially, the USF spreads the cost of universal service to those who already pay for telecommunication service instead of those who directly benefit from universal service. As the USF lacks any of the three characteristics of a fee, the USF is a tax.[1]

**D.     Congress's delegation of its the taxing authority to the FCC to impose and collect the USF is unconstitutional.**

---

[1] Obviously, despite the euphemistic name assigned to the USF tax by the government, 47 C.F.R. § 74.706, it is not a "contribution"—at least not in the most common sense of a voluntary gift. *See* Merriam-Webster Dictionary ("contribution").

24. The Constitution requires that "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States." U.S. CONST. art. I, § 1. "From this language the [Supreme] Court has derived the nondelegation doctrine: that Congress may not constitutionally delegate that power to another[.]" *Touby v. United States*, 500 U.S. 160, 164–65 (1991). "[R]ooted in the principle of separation of powers that underlies our tripartite system of Government," the nondelegation doctrine requires that "Congress, not agencies, [] make legislative decisions." *Mistretta v. United States*, 488 U.S. 361, 371 (1989). Put simply, "the lawmaking function belongs to Congress … and may not be conveyed to another branch or entity." *Loving v. United States*, 517 U.S. 748, 758 (1996) (internal citations omitted). Included in those "Powers herein granted" is the "Power to lay and collect Taxes," U.S. CONST. art. I, § 8, and "[t]axation is a legislative function[.]" *Nat'l Cable*, U.S. at 340.

25. There are instances, however, where Congress can properly delegate some of its authority. In those instances, Congress must supply a sufficient intelligible principle to guide the authorized federal actor's discretion. *See Gundy v. United States*, 588 U.S. 128, 135 (2019) (plurality op.); *accord Asociación de Exportadores e Industriales de Aceitunas de Mesa v. United States*, 102 F.4th 1252, 1259 (Fed. Cir. 2024). The constitutionality of a Congressional delegation hinges on "what task it delegates and what instructions it provides." *See Gundy*, 588 U.S. at 135. In the context of the USF, Congress's delegation of its taxing authority fails the intelligible principle standard because Congress did not sufficiently define the task or provide instructions.

26. In section 254 Congress delegated to FCC the power to create policies for the "preservation and advancement of universal service." 47 U.S.C. § 254(b). However, nowhere in the statutes does Congress define specifically what "universal service" entails. Instead, Congress acknowledged that "[u]niversal service is an evolving level of telecommunications services that

9

[FCC] shall establish[.]" *Id.* at § 254(c). Instead of providing the definition for what FCC was delegated to regulate, Congress allowed FCC to define it. In this way, Congress provided unchecked power to FCC in deciding what was delegated. This lack of clarity for what was or was not under FCC's delegated authority highlights Congress's failure of the intelligible principle.

27. Moreover, Congress's delegation of the USF tax further offends the nondelegation doctrine because of how it enabled FCC to further redelegate to a private subsidiary. While precedent, historically, allows Congress to confer some discretion on government agencies to execute duly-enacted statutes, *see City of Arlington v. FCC*, 569 U.S. 290, 304 n.4 (2013), "when it comes to private entities, however, there is not even a fig leaf of constitutional justification" for such an arrangement. *Dep't of Transp. v. Ass'n of Am. R.R.*, 575 U.S. 43, 62 (2015) (Alito, J., concurring). Thus, delegations of power to private entities are subject to heightened constitutional scrutiny.

28. In the USF regime, FCC has redelegated its authority to a private company, USAC. USAC, not Congress or FCC, has the power to both dictate the size of program spending and the USF tax rate, which as explained above ultimately burdens consumers. Because this further redelegation by FCC provides a private company with powers constitutionally vested in Congress, it lacks "even a fig leaf of constitutional justification." *Id.*

E. **As an improperly delegated unconstitutional tax, money obtained under the USF amounts to an unconstitutional taking under the Fifth Amendment.**

29. The Fifth Amendment provides that private property cannot "be taken" by the Government "for public use without just compensation." U.S. CONST. Amend. V. An unconstitutional taxing practice, as is the case here, is a government action that constitutes a taking without just compensation. *See Tyler v. Hennepin Cnty.*, 598 U.S. 631, 639 (2023) (holding that a county tax practice confiscating more money than was owed resulted in "*classic taking in which*

*the government directly appropriates private property for its own use*.") (emphasis added). Indeed, the illegal appropriation of tax dollars constitute "a classic pocketbook injury." *Id.* at 636.

30. Because the USF is a tax, Congress has the exclusive authority to impose it; here, Congress improperly delegated that authority to the FCC, and the FCC to the USAC. Thus, the tax was imposed by an agency (the FCC) and an entity (USAC) without authority to impose it. So the money taken from EQT amounts to a taking under the Fifth Amendment for which not just compensation was provided.

31. While originally modest in the rate set, the unconstitutional USF tax has ballooned from 5.7% to 36.6% over the past twenty-five years. *Compare Proposed Second Quarter 2000 Universal Service Contribution Factor* (Mar. 7, 2000) *with Proposed Second Quarter 2025 Universal Service Contribution Factor* (Mar. 13, 2025).

32. As a consumer of telecommunications services, over the last six years EQT paid at least $159,000 in USF tax to the Defendants (collected by and passed to the Defendants by EQT's telecommunications providers).

**CLAIMS FOR RELIEF**

**COUNT I:**
**MONEY OBTAINED AS A RESULT OF THE USF TAX CONSTITUTES AN UNLAWFUL TAKING BY THE GOVERNMENT FOR WHICH NO JUST COMPENSATION WAS PROVIDED**

33. EQT hereby reincorporates and re-alleges the foregoing paragraphs as though fully set forth herein.

34. Congress's standardless delegation to the FCC of legislative authority—to raise *and* spend nearly unlimited money—was unconstitutional. *See Consumers' Rsch*, 109 F.4th at 786. And to the extent Congress permitted FCC to re-delegate—or, in the alternative, *de facto* re-delegate—the authority to raise and spend unlimited monies to a private company, Congress

11

unconstitutionally delegated its legislative power. Put simply, Congress's standardless delegation to FCC—*of the authority to raise and spend money*—is unconstitutional.

36. Upon information and belief, and as alleged above, the Defendants appropriated EQT's property for its own use and, via duly authorized actions of Government personnel, provided it to others. As a direct result of this unconstitutional tax practice, Defendants have therefore taken EQT's property without just compensation in violation of the Fifth Amendment.

36. As such, EQT is entitled to refund of the unconstitutionally seized property.

## COUNT II:
## MONEY OBTAINED AS A RESULT OF THE USF TAX CONSTITUTES AN ILLEGAL EXACTION FOR WHICH REFUND IS OWED

37. EQT hereby reincorporates and re-alleges the foregoing paragraphs as though fully set forth herein.

38. An illegal exaction claim is properly brought "when 'the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum' that 'was improperly paid, exacted, or taken from the claimant in contravention of the Constitution[.]'" *Aerolineas Argentinas v. United States*, 77 F.3d 1564,1572 (Fed. Cir. 1996) (quoting *Eastport S.S. Corp. v. United States*, 372 F.2d 1002, 1007 (Ct. Cl. 1967)). To successfully assert an illegal exaction claim, plaintiffs must show two things. First, that money was paid to the government directly or was paid to a third party "at the direction of the government to meet a governmental obligation," and second, the government's required payment was "contrary to law." *Aerolineas Argentinas*, 77 F.3d at 1573–74.

39. Here, the USF tax constitutes an illegal exaction because it was paid by EQT to a third party at the direction of the government and the payment was contrary to law, namely the nondelegation doctrine. Because, as explained above, the USF tax constitutes an improper

delegation of Congress's taxing authority, and thus an illegal exaction, EQT is owed a refund of the amount paid.

**COUNT III:**

**ALTERNATIVELY, TO THE EXTENT THE USF COLLECTED EXCEEDS THE FCC'S STATUTORY MANDATE FOR THE UNIVERSAL SERVICE FUND, THE MONEY TAKEN IN EXCESS CONSTITUTES AN ILLEGAL EXACTION FOR WHICH REFUND IS OWED**

40. EQT hereby reincorporates and re-alleges the foregoing paragraphs as though fully set forth herein.

41. As explained above, to successfully assert an illegal exaction claim, plaintiffs must show two things. First, that money was paid to the government directly or was paid to a third party "at the direction of the government to meet a governmental obligation," and second, the government's required payment was "contrary to law." *Aerolineas Argentinas*, 77 F.3d at 1573–74.

42. Here, the USF tax constitutes an illegal exaction because it was paid by EQT to a third party at the direction of the government and the payment was contrary to law, namely through the FCC acting beyond the authority provided under 47 U.S.C. § 254. The FCC and USAC have unlawfully expanded the scope of the USF beyond the statutory mandate for universal service. Therefore, any funds collected in excess of that statutory mandate constitutes a required payment "contrary to law," and thus an illegal exaction.

43. As such, EQT is entitled to refund of those illegally exacted funds.

**PRAYER FOR RELIEF**

44. WHEREFORE, EQT respectfully requests that this Court enter judgment in its favor and that the Court:

    a. Declare that Defendants' collection of the USF tax constitutes a taking for purposes of the Fifth Amendment to the United States Constitution;

    b. Award to EQT just compensation and damages for the taking and breach in an amount to be determined at trial;

    c. Alternatively, declare that Defendants' collection of the USF tax constitutes an illegal exaction in contravention of the Fifth Amendment to the United States Constitution;

    d. Award EQT just compensation and damages for the illegal exaction in an amount to be determined at trial;

    e. Award EQT interest on the just compensation award for the taking and/or illegal extraction in an amount to be determined at trial;

    f. Award EQT its costs and reasonable attorney's fees incurred in this action to the extent allowable under any applicable law; and

    g. Award EQT such other and further relief as the Court may deem just and proper.

Dated: June 13, 2025                                    Respectfully submitted,


                                                        /s/ Ambrose Mitchell G. Bailey
                                                        Ambrose Mitchell G. Bailey
                                                        REED SMITH LLP
                                                        1301 K Street N.W.
                                                        Washington, D.C. 20005-3373
                                                        T: (202) 414-9381
                                                        F: (202) 414-9299
                                                        mbailey@reedsmith.com

                                                        Kyle O. Sollie
                                                        REED SMITH LLP
                                                        1717 Arch Street, Suite 3100
                                                        Philadelphia, PA 19103
                                                        T: (215) 851-8852
                                                        F: (215) 851-1420
                                                        ksollie@reedsmith.com

                                                        Michael I. Lurie
                                                        REED SMITH LLP
                                                        1717 Arch Street, Suite 3100
                                                        Philadelphia, PA 19103
                                                        T: (215) 851-8870
                                                        F: (215) 851-1420
                                                        mlurie@reedsmith.com

                                                        *Counsel for Plaintiff*
                                                        *EQT Corporation*

## CERTIFICATE OF SERVICE

The parties hereby certify that the foregoing filing was served upon the Court and all parties of record via the Court's electronic filing system.

Dated: June 13, 2025

                                                        */s/ Ambrose Mitchell G. Bailey*
Ambrose Mitchell G. Bailey
REED SMITH LLP
1301 K Street N.W.
Washington, D.C. 20005-3373
T: (202) 414-9381
F: (202) 414-9299
mbailey@reedsmith.com

Kyle O. Sollie
REED SMITH LLP
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
T: (215) 851-8852
F: (215) 851-1420
ksollie@reedsmith.com

Michael I. Lurie
REED SMITH LLP
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
T: (215) 851-8870
F: (215) 851-1420
mlurie@reedsmith.com

*Counsel for Plaintiff
EQT Corporation*